**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERRY CREEK RANCHERIA OF MAIDU INDIANS OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>DEBORAH HOWARD, also known as Deborah Brown, et al.,<br><br>Defendants. | No. 2:20-CV-2109-JAM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding with retained counsel, brings this civil action. Pending before the Court is Plaintiff's motion, ECF No. 12, for entry of a default judgment.

**I. PLAINTIFF'S ALLEGATIONS**

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) Deborah Howard, aka Deborah Brown; and (2) Jessie Brown. See id. at 1, 3-4. Plaintiff offers the following summary of the case:

> . . .This action concerns a continuing pattern of fraud and money laundering at the federally-recognized Berry Creek Rancheria of Maidu Indians of California ("Berry Creek" or "Tribe") by two former in-house professionals who were entrusted to look after its financial and business affairs. As to that, Berry Creek separately hired a woman named Deborah Howard ("Ms. Howard") to serve as its Chief Financial Officer and a man named Jesse Brown ("Mr. Brown") to act as its Tribal Administrator.

1

> However, at some point in time on or before the start of 2011, these two individuals who have since married entered into a discreet personal relationship and used their resultant joint power to supervise both the finances and business affairs of the Tribe to carry out a scheme centered around misappropriating tribal assets on a grand scale. Ms. Howard and Ms. Brown did this in four unique ways that the General Allegations section of this Complaint will discuss in significant detail: by (1) issuing a secret credit card to Mr. Brown on which they would make more than $1.3 million in personal expenditures; (2) misappropriating over $200,000 in cash withdrawals over the course of five Holiday seasons that were meant to provide Christmas gifts to tribal youth; (3) skimming more than $1.1 million of cash receipts from the Smoke Shop operated by Berry Creek before depositing the remainder of the funds into the Tribe's bank account; and (4) giving themselves upwards of $250,000 in unauthorized payroll distributions by manipulating the system managed by Ms. Howard.
> 
> This course of conduct went on for years, involved thousands of individual transactions, and was only discovered long after Ms. Howard and Mr. Brown's departures from the Tribe in 2017 when the bank finally disclosed the existence of the aforesaid credit card (after first informing the Berry Creek Tribal Council that its members could not access the account because Ms. Howard and Mr. Brown were the only authorized individuals). None of this activity was authorized, and all of it should serve as a basis for Berry Creek obtaining treble damages or more under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and assorted California tort claims.

Id. at 2.

Plaintiff asserts the following claims for relief:

| | |
|---|---|
| First Claim | RICO Violation. |
| Second Claim | Conversion. |
| Third Claim | Unjust Enrichment. |
| Fourth Claim | Fraudulent Deceit. |
| Fifth Claim | Constructive Fraud. |

See id. at 17-25.

## II. PROCEDURAL HISTORY

Plaintiff filed its complaint on October 22, 2020. See ECF No. 1. Process was returned executed on both named defendants on November 13, 2020. See ECF Nos. 4 and 5. On January 7, 2021, Plaintiff requested entry of default as to both defendants. See ECF No. 6. The Clerk of the Court entered Defendants' defaults on January 8, 2021. See ECF No. 7. Plaintiff's motion for default judgment has been served on Defendants at their personal addresses. See ECF

2

1  No. 12-23 (proof of service).  To date, Defendants have not appeared in the action or otherwise
2  responded to Plaintiff's motion.
3  Following an initial hearing on June 2, 2021, before the undersigned in Redding,
4  California, the matter was taken under submission.  See ECF No. 15 (minutes).  On June 30,
5  2021, the Court directed Plaintiff to appear for a prove-up hearing on July 8, 2021.  See ECF No.
6  19.  At the July 8, 2021, hearing before the undersigned in Redding, California, after taking
7  testimony from Plaintiff's forensic accounting expert, the Court directed Plaintiff to file
8  supplemental briefing on the issue of whether Plaintiff's factual allegations and evidence satisfy
9  the interstate commerce component of RICO for purposes of the treble damages sought in the
10 current motion.  See ECF No. 21 (minutes).  Plaintiff filed a supplemental brief with supporting
11 exhibits on August 13, 2021.  See ECF No. 22.

### III. DISCUSSION

14 Whether to grant or deny default judgment is within the discretion of the Court.
15 See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising this discretion, the
16 Court considers the following factors:  (1) the possibility of prejudice to the plaintiff if relief is
17 denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in
18 the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material
19 facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring
20 decisions on the merits when reasonably possible.  See Eitel v. McCool, 782 F.2d 1470, 1471-72
21 (9th Cir 1986).  Regarding the last factor, a decision on the merits is impractical, if not
22 impossible, where defendants refuse to defend.  See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp.
23 2d 1172, 1177 (C.D. Cal. 2002).
24 Where a defendant has failed to respond to the complaint, the Court presumes that
25 all well-pleaded factual allegations relating to liability are true.  See Geddes v. United Financial
26 Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); Danning v. Lavine, 572 F.2d 1386 (9th
27 Cir. 1978); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per
28 curiam); see also Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282,

1288 (C.D. Cal. 2001). Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. See Panning v. Lavine, 572 F.2d 1386 (9th Cir. 1978). However, the Court has the responsibility of determining whether the facts alleged in the complaint state a claim which can support the judgment. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). For this reason, the District Court does not abuse its discretion in denying default judgment where the factual allegations as to liability lack merit. See Aldabe, 616 F.2d at 1092-93.

While factual allegations concerning liability are deemed admitted upon a defendant's default, the Court does not presume that any factual allegations relating to the amount of damages suffered are true. See Geddes, 559 F.2d at 560. The Court must ensure that the amount of damages awarded is reasonable and demonstrated by the evidence. See id. In discharging its responsibilities, the Court may conduct such hearings and make such orders as it deems necessary. See Fed. R. Civ. P. 55(b)(2). In assessing damages, the Court must review the facts of record, requesting more information if necessary, to establish the amount to which the plaintiff is lawfully entitled. See Pope v. United States, 323 U.S. 1 (1944).

Where actual damages are not proved, it may be appropriate in some cases to award nominal damages to vindicate the deprivation of certain "absolute" rights. See Cummings v. Connell, 402 F.3d 936, 942 (9th Cir. 2005). Nominal damages may be appropriate under California law for the torts of trespass, see Consterisan v. Tejon Ranch Co., 255 Cal.App.2d 57, 60 (5th Dist. 1967), assault, see Liljefelt v. Blum, 33 Cal.App.721 (1st Dist. 1917) (per curiam), loss of publicity, see Ericson v. Playgirl, Inc., 73 Cal.App.3d 850, 859 (2nd Dist. 1977), as well as breach of contract, see id.. As the term implies, nominal damages is defined as a mere token or trifle. See Cummings, 402 F.3d at 943.

Here, Defendants have failed to respond to Plaintiff's complaint. Therefore, the well-pleaded factual allegations contained in the complaint are deemed true. Further, these allegations state claims upon which relief can be granted.

///

///

4

**A.      The *Eitel* Factors**

       1.      Possibility of Prejudice to Plaintiff if Relief is Denied

This factor weighs in favor of granting Plaintiff's motion. Absent entry of default judgment, Plaintiff is prejudiced by Defendants' failure to appear and defend. See Aussieker v. Staccato Props., LLC, 2019 U.S. Dist. Lexis 221053, *4 (E.D. Cal. 2019); Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).

       2.      The Merits and Sufficiency of Plaintiff's Claims

The second and third Eitel factors are interrelated and should be considered together. See Aussieker, 2019 U.S. Dist. Lexis 221053 at *4. These factors ask whether the plaintiff has stated a claim upon which relief can be granted. See id. Here, Plaintiff's allegations as set forth in the complaint state, at a minimum, a claim for relief under RICO. Given the presumption that Plaintiff's well-pleaded factual allegations are true, these factors weigh in favor of entering a default judgment.

       3.      The Sum of Money at Stake

This factor weighs in favor of granting Plaintiff's motion. The Court considers the amount of money at stake in the context of the seriousness of the conduct alleged. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176-77. In light of the extensive egregious pattern of fraud alleged in the complaint, the sum involved does not weigh against Plaintiff. See Mandelbaum v. Hanh Vo, 2012 U.S. Dist. Lexis 199630 at *18 (C.D. Cal. 2012).

       4.      The Possibility of a Dispute Concerning Material Facts

This factor also weighs in favor of granting Plaintiff's motion. Where, as here, the defendants default by refusing to answer and defend, the allegations in the well-pleaded complaint are presumed true and, as such, there is no possible dispute of material facts. See United States v. D&P Prods., 2019 U.S. Dist. Lexis 98910 at *9 (E.D. Cal. 2019).

///
///
///
///

       5.      <u>Whether Default was Due to Excusable Neglect</u>

This factor in particular weighs in favor of Plaintiff. As supported by the declaration of Plaintiff's counsel, it is clear Defendants knew of the existence of this action and simply decided to ignore it. According to Plaintiff:

> The reason Berry Creek knows this is because the Defendants have actually communicated at length about this suit with newspaper reporters on at least two separate occasions. The first of these actually occurred on the evening of the filing date for the Complaint in this matter, with a reporter for the Sacramento Bee named Sam Stanton reaching out to Ms. Howard to discuss the allegations contained in the just-filed pleading. *See* Declaration of Cheryl A. Williams ("Williams Decl."), Ex. 1. The text of the online version of the article includes at least some of Ms. Howard's responses to the questions being posed, with her stating that she "flatly denied the allegations," and further exclaiming after hearing the substance of such allegations, "[t]hat is absolutely ridiculous," "we don't know anything about it," and that she and her husband Mr. Brown "absolutely not, did not steal even one dime." Williams Decl., Ex. 1 at p. 2. Self-serving remarks aside, what this article truly shows is Ms. Howard's incontrovertible awareness of the instant suit, and the second one goes to show what she chose to do with such knowledge. To wit, a reporter named Seti Long with the small-town newspaper the Gridley Herald published an article after the filing of the Complaint which begins by explaining that "[a] woman with familial roots in Gridley and her husband have been sued by the Berry Creek Rancheria of Maidu Indians, for $38 million in damages." Williams Decl., Ex. 2 at p. 1. The article then proceeds to detail when the suit was filed, what professional roles Ms. Howard and Mr. Brown occupied at Berry Creek, what fraud they allegedly committed and to the tune of what dollar amount, and how the Tribe was claiming that the "[b]usinesses owned by Howard and Brown, the Exchange restaurant in Oroville and Makeup Room and Company in Gridley,… were established with misappropriated funds." *Id.* This last fact meant that "the writing [was] on the wall for the two businesses," according to the article, with the Makeup Room and Company "closing and liquidating inventory." *Id.*
> While this article failed to explain what the "writing on the wall" meant for The Exchange, that, too, became apparent in recent months. As explained in the Complaint, The Exchange is a self-described "upscale full-service bar" in historic Oroville, the kind that needs a liquor license from the California Department of Alcoholic Beverage Control ("ABC") in order to operate in the intended fashion. (Dkt. No 1, ¶ 48) It just so happens that Mr. Brown had such a license for The Exchange according to the online database maintained by the ABC. *See* Williams Decl., Ex. 4. The key word in the foregoing sentence is "had," though, as Mr. Brown transferred this liquor license on February 23, 2021 to the owner of the new occupant of his restaurant space, the Coyote Cantina and Cocina. *See* Williams Decl., Ex. 5. In other words, the fate of The Exchange was one and the same as that for the Makeup Room and Company: Ms. Howard and Mr. Brown closed the business and liquidated its assets since they knew the Complaint filed by Berry Creek in this matter contended that it was one of the "[b]usinesses…

///

6

established with misappropriated funds." (footnote 2 omitted). Williams Decl., Ex. 1 at p. 3.

ECF No. 12-1, pgs. 8-9.

      6.    <u>Policy Favoring Decisions on the Merits</u>

While dispositions on the merits are favored, such dispositions are impossible when a defendant defaults by refusing to appear and defend. <u>See</u> <u>Johnson v. Pizano</u>, 2019 U.S. Dist. Lexis 101084, *13 (E.D. Cal. 2019). This factor weighs in favor of granting Plaintiff's motion.

**B.**    **<u>Damages</u>**

Plaintiff asserts actual damages in the amount of $2,938,992.27. <u>See</u> ECF No. 12-1. Plaintiff seeks a total damages award of $8,816,976.81, representing treble actual damages pursuant to 18 U.S.C. § 1964(c). <u>See id.</u> Plaintiff further seeks an award of pre- and post-judgment interest at a rate of 7%. <u>See id.</u> As to fees and costs, Plaintiff's counsel has filed a declaration in support of costs sought on behalf of Plaintiff in the amount of $1,612.64. <u>See</u> ECF No. 18. Plaintiff's Counsel does not at this time seek attorney's fees. <u>See id.</u>

Plaintiff's actual damages calculations are supported by the declaration and hearing testimony of forensic accounting expert, Rodrigo Macias. <u>See</u> ECF No. 12-11 (declaration and exhibits).

RICO provides for mandatory treble damages. <u>See</u> 18 U.S.C. § 1964(c). Treble damages under § 1964(c) are available to a party injured "by reason of a violation of section 1962. . . ." Section 1962 provides:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal. . . to use or incest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

7

>   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>   (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

The Court asked Plaintiff to submit further briefing on the availability of treble damages under RICO in this case. In its supplemental brief, Plaintiff accurately frames the issue as follows: "Turning to . . .section [1962], the Court. . . asked counsel for Berry Creek Rancheria . . .to provide supplemental briefing on the issue of whether the allegations and evidence in this case satisfy the interstate commerce component that is found within each one of the four 'prohibited activities.'" ECF No. 22, pg. 7.

At the outset, the Court notes that a violation of any one of the four provisions of § 1962 triggers mandatory treble damages under § 1964(c). See Schlenvogt v. Marshall, 2008 U.S. Dist. Lexis 20283, *8 (E.D. Cal. 2008). Each of the four provisions of § 1962 requires some nexus to interstate or foreign commerce. See 18 U.S.C. § 1962; see also United States v. Barbeito, 2010 U.S. Dist. Lexis 55688, *36 (S.D.W.V. 2010). Under § 1962, a plaintiff is required to show that the enterprise was either "engaged in . . .interstate or foreign commerce" or its activities affected interstate or foreign commerce. See Barbeito, 2010 U.S. Dist. Lexis 55688, *36; see also United States v. Riddle, 249 F.3d 529, 536 (6th Cir. 2001). The required nexus to interstate or foreign commerce "need not be great" and proof of a "minimal effect" on interstate commerce is sufficient. See United States v. Bagnariol, 665 F.2d 887, 892 (9th Cir. 1981). Evidence of even a de minimis impact on interstate commerce suffices. See United States v. Asefi, 788 F. App'x 449, 450 (9th Cir. 2019).

A nexus to interstate commerce can be shown by evidence that the overarching "enterprise itself was in some way connected to interstate commerce" or that the constituent predicate acts alleged to violate § 1962 created the nexus. See United Stated v. Johnson, 440 F.3d 832, 841 (6th Cir. 2006). It is not necessary to establish an actual impact on interstate commerce as evidence of a "probable or potential" impact is sufficient. See United States v. Juvenile Male,

8

118 F.3d 1344, 1349 (9th Cir. 1997); see also Pecot v. SF Deputy Sheriff's Ass'n, 2009 U.S. Dist. Lexis 21710, *8 (N.D. Cal. 2009).

In Evans v. City of Chicago, the court found a sufficient nexus from acquisition of "supplies and office equipment from companies located outside [the state] even though [such] were not shown to be used by, or central to, the . . .racketeering activity charged." 2001 U.S. Dist. Lexis 14083, *26 (N.D. Ill. 2001). In United States v. Walker, a sufficient nexus to interstate commerce was found from "the acquisition of . . .law books and computer equipment" from another state. 2008 U.S. Dist. Lexis 29783, *13 (W.D. La. 2008). Demanding kick-backs over the telephone – which is an instrumentality of interstate commerce – shows a sufficient nexus to interstate commerce for purposes of RICO. See Goldewska v. Human Dec. Ass'n, Inc., 2005 U.S. Dist. Lexis 36998, *30-*31 (E.D.N.Y. 2005). Even entirely in-state activity can be aggregated to show a sufficient connection to interstate commerce because "individual instances of conduct could, through repetition, substantially affect interstate commerce." United States v. Garcia, 143 F. Supp. 2d 791, 812 (E.D. Mich. 2000) (discussing "aggregation principle").

Applying the foregoing, the Court finds that Plaintiff has established at least a de minimis nexus to interstate commerce. First, there is evidence of a direct effect on interstate commerce to the extent Defendants, or either of them, used misappropriated tribal funds to travel to Las Vegas, as alleged and established by the evidence submitted in support of the current motion. Second, there is evidence of an aggregate impact on interstate commerce from the various in-state activities alleged and shown by the evidence, such as purchasing a business in Oroville, California.

///
///
///
///
///
///
///

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion, ECF No. 12, for a default judgment be granted;

2. Plaintiff be awarded $8,816,976.81 in damages;

3. Plaintiff be awarded an additional $1,612.64 in costs; and

4. Plaintiff be awarded pre- and post-judgment interest at a rate of 7% in an amount to be determined following submission of a declaration by Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 5, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE